UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ALLIANCE BARRIER FILMS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:16-cv-00009-RLY-MPB |
| | ) |
| QUANTUM POLYMERS, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on three related motions, Defendant's Motion to Strike Supplemental Reports ([Docket No. 68](#)), Plaintiff's Motion to Amend Complaint ([Docket No. 73](#)), and Plaintiff's Motion to Amend Answer and Affirmative Defenses to Counterclaim ([Docket No. 74](#)). Each motion is ripe. ([Docket No. 68](#); [Docket No. 71](#); [Docket No. 73](#); [Docket No. 74](#); [Docket No. 78](#); and [Docket No. 81](#)).

Alliance Barrier Films, LLC, Plaintiff, ("Alliance") alleges that Quantum breached its contract when it delivered resin not in conformance with Alliance's order, which resulted in damaged products being sold to Alliance's customers and required Alliance to issue credits to customers' accounts in excess of $300,000.00. ([Docket No. 1-1](#)).

The three motions currently before the Court involve a similar sequence of facts regarding this matter's case management. Alliance filed this action on December 30, 2015, in state court, which was followed by Quantum's removal to this Court in January 2016. ([Docket No. 1](#)). On April 21, 2016, the Court entered a Case Management Plan, which in relevant part included a June 15, 2016, deadline for motions to amend pleadings and a discovery deadline of May 31, 2017. ([Docket No. 17](#)). In accordance with those deadlines, Alliance submitted opening

reports from its experts, Fred Beerwart and Randy Valli, on February 28, 2017. ([Docket No. 68 at ECF p. 1](#)). Quantum served its opening report by the April 29, 2017, response deadline. ([Docket No. 68](#)).

Since the CMP was approved, the Court has granted *numerous* motions to extend the discovery deadline, which is now set to close August 31, 2017. ([Docket No. 77](#)). Alliance first served written discovery requests on Quantum in February 2017. ([Docket No. 73 at ECF p. 2](#)). On April 7, 2017, Quantum responded to the discovery requests, in part, but raised objections to specific interrogatories and requests for production that it refused to answer. ([Docket No. 71 at ECF p. 3](#); [Docket No. 78 at ECF p. 2](#)). In relevant part, Quantum refused to answer Alliance's Interrogatory No. 4 and Request No. 7, which sought some specific information regarding resin later sold to Alliance. ([Docket No. 71 at ECF p. 2](#)). The parties attempted to negotiate a resolution to their discovery dispute and, after those negotiations failed, a telephonic status conference was held with this Court on May 18, 2017. ([Docket No. 71 at ECF p. 3](#)). Thereafter, this Court ordered Quantum to respond to the above-mentioned written discovery requests on or before June 10, 2017. ([Docket No. 63](#)). Quantum provided the documents on May 31, 2017. ([Docket No. 71 at ECF p. 3](#)).

On June 15 and 16, 2017, Alliance deposed Quantum's principals and employees and there was a 30(b)(6) deposition of Quantum regarding the resin information, including questioning regarding discovery Alliance received on May 31, 2017. ([Docket No. 71 at ECF p. 3](#)). On or about June 23 and 24, 2017, Alliance provided supplemental expert reports to both Mr. Beerwart and Mr. Valli's original reports, contending that the reports required updating after late disclosure of evidence by Quantum, for Mr. Beerwart's report, and by a third party, for Mr.

Valli's. ([Docket No. 68](#)).[1] On June 27, 2017, Quantum filed its Motion to Strike these supplemental expert reports. ([Docket No. 68](#)). At the time, the parties' rebuttal reports were due on June 23, 2017. Two telephonic status conferences were held on June 28 and 29, 2017, to discuss the issue. ([Docket No. 69](#); [Docket No. 72](#)). Parties were later provided until July 31, 2017, to provide rebuttal experts to the supplemental reports and all expert witness discovery was extended until August 31, 2017. ([Docket No. 77](#)).

On July 6, 2017, Alliance filed a Motion to Amend its Complaint ([Docket No. 73](#)) and a Motion to Amend its Answer and Affirmative Defenses to Counterclaim ([Docket No. 74](#)), contending that the late-disclosed discovery by Quantum provided evidence, for the first time, to support additional requests for relief.

### I. Motion to Strike Alliance's Expert's Supplemental Expert Reports ([Docket No. 68](#))

Quantum has requested that this Court strike the supplemental expert report submitted by Mr. Beerwart on June 23, 2017, and the supplemental expert report submitted by Mr. Valli on June 24, 2017 pursuant to [Fed. Rule of Civ. Proc. 37(c)(1)](#). ([Docket No. 68](#)). Quantum asserts Alliance did not seek leave of Court nor notify Quantum of its intention to submit supplemental opening reports, despite that the reports were submitted just days prior to the scheduled depositions of Mr. Beerwart and Quantum's rebuttal expert, Sonny Wooldridge, and well after Mr. Valli's deposition. *Id.* Quantum argues it was prejudiced by the delay of Alliance's

---

[1] Quantum argues that the supplemental expert reports did not point to any newly discovered information, nor has there been any event that would justify supplementation or new expert opinions to address those new developments. ([Docket No. 68 at ECF p. 5](#)). Obviously, the parties' diametrically opposed positions cannot coexist yet neither party cites any pleadings, motions, discovery, or otherwise to support their contentions; leaving the Court with little substance to resolve their dispute.

submission, which effectively precluded Quantum from submitting rebuttal reports to Alliance's opening reports that account for the supplemental reports' opinions. ([Docket No. 68 at ECF p. 5](#)).

Alliance disagrees with almost all of Quantum's assertions. ([Docket No. 71](#)). Foremost, Alliance argues both supplements were due to late-discovered evidence. Specifically, Mr. Beerwart's supplemental report was based on information about the resins first disclosed to Alliance on May 31, 2017, in the previously mentioned court-ordered document production from Quantum. ([Docket No. 71 at ECF p. 1](#)). Alliance asserts that Mr. Beerwart's supplemental report merely provides that this new discovery supports his original report's conclusions and opinions. ([Docket No. 71 at ECF p. 4](#)).[2] Moreover, Alliance argues that Quantum's rebuttal expert, Mr. Woolridge, testified at his deposition that he had not seen Mr. Beerwart's supplemental report, despite that Alliance had provided it a few days earlier; thus Alliance asserts that Quantum could have prevented the prejudice it asserts. *Id.* Furthermore, upon Quantum's objection to questions about the supplemental report, Mr. Wooldridge's deposition was left open to supplement his rebuttal report and give further testimony in support thereof. *Id.*

Alliance provides that Mr. Valli's supplement was based on new sales data he received from a third-party after submitting his initial report. ([Docket No. 71 at ECF p. 6](#)). Mr. Valli's original report contained opinions regarding lost sales incurred by Alliance as a result of the defective resins, which Quantum's expert critiqued because it did not contain actual sales data. ([Docket No. 71 at ECF p. 7](#)). Moreover, Alliance argues Mr. Valli's supplement shows a

---

[2] Again, neither party provides the Court with either Mr. Beerwart's or Mr. Valli's original or supplemental report, nor do they even provide the Court with relevant excerpts to support the allegations that, in Alliance's case, the experts merely add further support to opinions from the original report, or, in Quantum's case, the supplements contain new opinions that Quantum is now precluded from contesting.

downward adjustment in sales losses, thus it is more favorable to Quantum than the sales losses in the original report. (Docket No. 71 at ECF p. 9).

Fed. Rule of Civ. Proc. 26(a)(2)(B) provides an expert witness disclosure must be accompanied by a written report if the witness is retained or specially employed to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). This report must contain, in relevant part, "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." *Id.* Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In other words, Rule 37 permits this sanction when the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party. *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000). The determination of whether a Rule 26(a) violation is harmless is left to the broad discretion of the court. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1231 (7th Cir. 1996). The court should consider the surprise or prejudice to the blameless party, the ability to cure any resulting prejudice, the amount of disruption to the trial that would result from permitting the use of the evidence, and the bad faith involved in not producing the evidence at an earlier date. *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995).

The Court cannot be certain Alliance was justified by Mr. Beerwart's late supplement. On one hand, Alliance chose to not serve written discovery until February 2017, well after discovery began in this case; thus, creating a timeline where Alliance was left without necessary evidence to submit to its experts. On the other hand, Quantum also refused to answer certain

requests until this Court issued an order compelling response—which allegedly yielded evidence that then precipitated Alliance's need to supplement Mr. Beerwart's report.

The imposition of the sanctions would be drastic and unjustified considering the steps already taken to cure the supplements. Mr. Valli's supplement is particularly straightforward, given it provides a downward adjustment in his opinion of Alliance's sales losses and is, therefore, helpful to Quantum. Quantum provides no specific argument otherwise as to how it would be prejudiced by Mr. Valli's supplement. With regards to Mr. Beerwart's report, Quantum sets forth so specific prejudice and there appears to be a question as to whether the supplement even contains new opinions. Moreover, even if Quantum were prejudiced this Court's order extending the deadline for rebuttal experts until July 31, 2017 and expert witness discovery until August 31, 2017 would in effect cure Quantum's general arguments of prejudice it set forth in its brief. (Docket No. 68 at ECF pp. 3-4). Finally, there is no evidence Alliance acted in bad faith nor does Quantum set forth an argument to that effect.

The Court **DENIES** Quantum's Verified Emergency Motion to Strike Supplemental Expert Reports (Docket No. 68).

II. **Alliance's Motion to Amend Complaint (Docket No. 73) and Motion to Amend Answer and Affirmative Defenses to Counterclaim (Docket No. 74)**

Alliance filed a Motion to Amend its Complaint and its Answer and Affirmative Defenses to Quantum's Counter Complaint, which the Court will address together. Plaintiff seeks the relief pursuant to Federal Rule of Civil Procedure 15(a)(2). Alliance asserts that its requests for leave to amend both pleadings stem from the late discovery propounded by Quantum. With regards to the motion to amend the complaint, Alliance asserts the only new factual issue raised is that Quantum had knowledge about the resins at the time of the sale and that, with the addition of this fact, Alliance adds a fourth count for fraud. (Docket No. 73-1).

Quantum's counterclaim seeks damages for Alliance's non-payment for some of the resins. With regards to the motion to amend answer, Alliance seeks to add an affirmative defense based upon the fact that Quantum had knowledge about the resin at the time of the sale. ([Docket No. 74-1](#)).

Alliance does not explicitly cite the good cause standard. Instead, it argues its delay is justified because prior to formal discovery, the parties made several attempts to settle the case and in the course of those discussions, exchanged information informally in an effort to control litigation costs. Alliance asserts that these motions were ultimately stalled due to Quantum's refusal to answer discovery requests without a court order otherwise. Alliance asserts that there is no prejudice to Quantum because the only factual amendments to its pleadings are facts that were in Quantum's possession. ([Docket No. 73 at ECF p. 5](#); [Docket No. 74 at ECF pp. 4-5](#)). Alliance asserts the amendments will not implicate the case's current schedule as additional discovery will not be necessary. ([Docket No. 73 at ECF p. 5](#); [Docket No. 74 at ECF p. 5](#)).

Quantum objects to the amendments, asserting that Alliance has not shown good cause for amending the pleadings because Alliance did not act with any diligence with regards to the discovery in this case; thus, the motions should be denied due to Alliance's undue delay. ([Docket No. 78 at ECF p. 3](#)). Moreover, Quantum argues that Alliance's original complaint stated the same facts on which it now claims as the basis for the additional count in its proposed amended complaint, specifically that the resin was not "barefoot" and "generic prime" ([Docket No. 1-1](#), ¶ 5) and that "at all pertinent times, Quantum was aware of the unfitness of the Products." ([Docket No. 1-1](#), ¶ 21). Quantum also asserts that pleading amendments would initiate a new round of motions to dismiss and would require additional discovery so that it could properly defend against the new elements of the fraud claim. ([Docket No. 78](#) ECF pp. 6-7).

Generally, a motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). When a plaintiff asks for leave to amend a complaint after the deadline set in the case management plan has passed, however, courts "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Id*. "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Id*. at 720. If a plaintiff has shown good cause, the Court should allow amendment "unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015).

Both motions for leave were filed over a year after the deadline to amend the pleadings of June 15, 2016. Alliance does not explicitly argue good cause for its delay in its motions, instead it focuses on Quantum's refusal to answer written discovery requests filed in February 2017, that were not answered until four months later in May 2017 in response to a Court order. Yet, our primary consideration is the diligence of Alliance, the party seeking amendment. Alliance admits it did not issue written discovery prior to February 2017, ten months after the Case Management Plan was approved, in an effort to minimize litigation costs. This goal is understandable and aligned with the Court's multiple efforts at early settlement conferences. Yet, it does not minimize the party's responsibility to diligently handle its case. Notably, the written discovery was issued *well after* the deadline for pleading amendments; therefore, even if Quantum had not objected to the discovery requests in question Alliance would have been held to this good cause standard that it fails to meet.

Even if the Court assumes Alliance had met the good cause standard, amendment would be denied because of Alliance's undue delay and undue prejudice that would result. "[T]he longer the delay, the greater the presumption against granting leave to amend." *Tamari v. Bache & Co. S.A.L*, 838 F.2d 904, 908 (7th Cir. 1988). Alliance's contention that it acted with diligence is without merit. Alliance's decision to use "informal discovery"[3] in lieu of formal discovery came with certain risks, which Alliance accepted when it chose not to issue written discovery until February 2017. Despite Alliance's claims that granting the leave to amend would not further delay this matter or require additional discovery, it is apparent from the party's starkly different positions that additional discovery would be sought and that Quantum would likely file a motion to dismiss—delaying the resolution of this case. *Tamari*, 838 F.2d at 908 (internal quotations omitted) ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party."). Finally, given that Quantum has already deposed four of Alliance's witnesses and one of their disclosed experts without having the opportunity to ask these witnesses about facts specific to the fraud claim—it is difficult to imagine how some prejudice does not exist.

To the extent Alliance argues that there should be no objection to the Motion to Amend the Complaint as Alliance has sufficiently pleaded the factual allegations in its Complaint—Alliance cannot argue on one hand they did not have the facts necessary to plead a fraud claim until this late juncture and on the other hand that they have already pleaded the requisite facts to assert a fraud claim and now seek to merely add the count itself. These arguments are factually contradictory and cannot coexist. Moreover, this case is not akin to *Johnson v. City of Shelby,*

---

[3] In addition to relying on "informal discovery" Alliance provides no evidence or explanation of these efforts to illustrate to the Court that it was diligently working its case up.

*Miss.*, 135 S. Ct. 346 (2014), where the Supreme Court held that Plaintiff's complaint was not deficient for its failure to explicitly name 42 U.S.C. § 1983 in his civil rights claim because the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 346. Fed. Rule Civ. Proc. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Johnson*, the Court was addressing the technical failure, which in no way affected the claim being asserted nor the relief being sought. Here, Alliance is seeking a new claim/affirmative defense *and* a new request for relief, in punitive damages.

In sum, Alliance has failed to show good cause for seeking leave to amend its Complaint and Answer and Affirmative Answer's to Quantum's Counterclaim. The Court **DENIES** Alliance's Motion for Leave to Amend its Complaint (Docket No. 73) and Motion for Leave to Amend Answer and Affirmative Defenses to Counterclaim (Docket No. 74).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Quantum's Motion to Strike Supplemental Reports (Docket No. 68); **DENIES** Alliance's Motion for Leave to Amend Complaint (Docket No. 73), and **DENIES** Alliance's Motion for Leave to Amend Answer and Affirmative Defenses to Counterclaim (Docket No. 74).

**SO ORDERED.**
**Dated:** 8/24/2017

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.